FILED
2020 Mar-18  PM 12:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **ANDREW EDWARDS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **VS.** ) | **CASE NO. 2:20-cv-00114-JHE** |
| ) | |
| **MED-TRANS CORPORATION,** ) | |
| **a foreign corporation,** ) | |
| **WAKEFIELD & ASSOCIATES,** ) | |
| **INC. a foreign corporation,** ) | |
| **TRANS UNION, LLC** ) | |
| **a foreign limited liability company,** ) | |
| **EXPERIAN INFORMATION** ) | |
| **SOLUTIONS, INC. a foreign** ) | |
| **corporation.** ) | |
| ) | |
| **Defendants.** ) | |

## AMENDED COMPLAINT

### Parties

1. Plaintiff, Andrew Edwards (hereinafter referred to as "Edwards") is of sound mind, over the age of nineteen (19) years, and at all times relevant hereto, was a resident of the Northern District of Alabama, Southern Division.

2. A. Defendant, Med-Trans Corporation  (hereinafter referred to as "Med-Trans") is an foreign corporation, organized under the laws of the State of North Dakota and at all times relevant hereto was not authorized to do business in the Northern District of Alabama, Southern Division. However, at all times relevant

hereto, it was doing business in the Northern District of Alabama, Southern Division.

B. At all times relevant hereto, Med-Trans was also a furnisher of credit information as defined under the Fair Credit Reporting Act. *15 USC 1681 et seq.*

3. A.  Defendant, Wakefield & Associates, Inc. (hereinafter referred to as "Wakefield") is an foreign corporation, organized under the laws of Colorado and at all times relevant hereto was authorized to do business and was doing business in the Northern District of Alabama, Southern Division.

B. At all times relevant hereto, Wakefield's was a "debt collector" as defined pursuant to the Fair Debt Collections Practice Act. *15 USC 1692 et. seq.*

C. At all times relevant hereto, Wakefield was also a furnisher of credit information as defined under the Fair Credit Reporting Act. *15 USC 1681 et seq.*

4. A. The Defendant, Trans Union, LLC, (hereinafter referred to as "TransUnion") is a foreign limited liability company, organized under the laws of Delaware and at all times relevant hereto, was authorized to do business and was doing business in the Northern District of Alabama, Southern Division.

B. At all times relevant hereto, Trans Union was also a Credit Reporting Agency as defined under the Fair Credit Reporting Act. *15 USC 1681 et seq.*

5. A. The Defendant, Experian Information Solutions, Inc., (hereinafter referred to as "Experian") is a foreign corporation, organized under the laws of Ohio and at all times relevant hereto, was authorized to do business and was doing business in the Northern District of Alabama, Southern Division.

B. At all times relevant hereto, TransUnion was also a Credit Reporting Agency as defined under the Fair Credit Reporting Act. *15 USC 1681 et seq.*

## Jurisdiction

6. The jurisdiction of this Court is invoked pursuant to 15 U.S.C. Sections 1681e, 1681i, 1681n, 1681o, 1681s-2(b) and 1692. These sections are commonly referred to as "The Fair Debt Collection Practices Act" and "The Fair Credit Reporting Act."

7. This Court has personal jurisdiction over the Defendants because, at all times relevant hereto, they were conducting business throughout the United States, including the Northern District of Alabama; they have sufficient minimum contacts with the various states of the United States, including the Northern District of Alabama; and/or sufficiently avail themselves of the markets of the various states of the United States, including the Northern District of Alabama to render the exercise of personal jurisdiction by this Court permissible.

## <u>Venue</u>

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this District.

12. The Defendants conduct business in this district and are subject to personal jurisdiction in this District.

13. Venue is also proper because: (a) Defendants conduct business in this District and have intentionally availed themselves of the laws and markets within this District; (b) do substantial business in this District; and (c) are subject to personal jurisdiction in this District.

## <u>Factual Allegations</u>

14.  On March 23, 2017 Edwards was travelling on volunteer business in Chattanooga, Tennessee when he suffered a cardiac arrest and lost consciousness.

15. Edwards was transported to Erlanger Baroness Hospital in Chattanooga.

16. Upon arrival, Edwards was stabilized.  He was put into a medical-induced coma.

17. Edwards had suffered recent severe cardiovascular issues and had been treated by physicians in Birmingham.

18. Because of this, and also because Edwards medical conditioned had been stabilized and was a non-emergency condition, physicians at Erlanger Baroness

Hospital determined that it would be in Edwards best interest that he be transported to a hospital in Birmingham to be monitored and treated by his physicians who were familiar with him and his medical history.

19. On March 24, 2017 it was determined by Edwards' attending physician at Erlanger Baroness Hospital, that he be transported to Birmingham by an air ambulance owned and operated by Med-Trans.

20. At all times during the events described in paragraphs 14-19 above, Edwards was either unconscious or semi-consciousness. Consequently, he lacked any capacity to make any knowing or voluntary decision regarding his health care.

21. At all times during the events described in paragraphs 14-19 above, Edwards was either unconscious or semi-consciousness. Consequently, he lacked any capacity to make any knowing or voluntary enter or agree to any contract with any individual or entity.

22. Neither Edwards, nor any agent or representative on his behalf, entered into any contract or agreement to pay or reimburse Med-Trans for the cost and / or expense of transporting Edwards from Chattanooga, Tennessee to Birmingham.

23. Med-Trans did not disclose to Edwards, nor any agent or representative on his behalf, the cost / or expense of transporting Edwards from Chattanooga, Tennessee to Birmingham.

24. Further, such services by Med-Trans were not medically necessary.

A. The distance between Chattanooga and Birmingham is approximately 147 miles, less than 2 hours via ground ambulance as opposed to over an hour by air ambulance. The difference of one hour between ground transport versus air transport was of no consequence, given that Edwards had been stabilized and was not in a medical emergency.

B. The fastest and most direct route between Chattanooga and Birmingham is Interstate 59, which runs direct between the 2 cities. This route passes through Gadsden, Alabama (which is almost halfway between the 2 cities) where 2 major hospitals are located. In the event Edwards experienced a medical emergency during ground transport, these 2 hospitals would be available to which Edwards could be diverted and treated.

25. On or about April 1, 2017 Med-Trans mailed to Edwards an authorization to bill Edwards' health insurance carrier, Blue Cross and Blue Shield of Alabama, to receive "proper reimbursement". The authorization also acted as an assignment of Edwards' health insurance benefits to Med-Trans.

26. The authorization also contained the following language:

I understand that I am financially responsible for the billed charges for the services provided to patient by Med-Trans Corporation, regardless of my insurance coverage and in some cases may be responsible for an amount in addition to that which is paid by my insurance, such as co-pay, co-insurance, deductible and any remaining balance.

27. Edwards underlined this section and added the language "…subject to fair and reasonable charges".

28. The authorization, nor none of the documents accompanying it, stated the amount Med-Trans claimed Edwards owed.

29. On April 6, 2017 Edwards signed the authorization and returned it to Med-Trans.

30. On or about Med-Trans informed Edwards that it was claiming $57,616.07 for its services.

31. On or about May 9, 2017 Edwards health insurance carrier, Blue Cross and Blue Shield of Alabama, informed Edwards that it had determined that the eligible charge owed to Med-Trans was $14,009.30, that it had paid $11,437.30, and Edwards owed $2,500.00 as co-pay / coinsurance and $82.00 as a deductible.

32. On or about May 23, 2017 Med-Trans informed Edwards that it was seeking the additional payment of $46,188.77 from him.

33. A. On May 23, 2017 Edwards contacted Med-Trans via telephone and spoke to a claims adjuster / collector "Kia"

   B. She informed Edwards that Med-Trans was appealing the amount Edwards health insurance carrier had agreed to pay and suggested Edwards do the same, which he did.

C. "Kia" also informed Edwards that if the med-flight had begun and ended in Alabama, Med-Trans would had to have settled for the amount set by Edwards health insurance carrier ($14,009.30).

34. On or about July 3, 2017 Edwards' health insurance carrier informed him it had denied his appeal.

35. On or about August 1, 2017 Edwards spoke with his health insurance carrier. It informed Edwards that the amount it determined was due for Med-Trans services ($14,009.03) was based on national averages for like or similar services and the amount represented the actual cost plus profit.

36. From September 2017 until November 30, 2017 Edwards and Med-Trans engaged in efforts to resolve the alleged outstanding amount without success.

37. On November 30, 2017 Mr. Edwards again corresponded with Med-Trans and disputed the amount of the outstanding amount claimed by Med-Trans. He again requested the basis or evidence that Med-Trans could supply to justify the alleged outstanding amount (noting that he asked for such information in the past and none had ever been provided). None was ever provided.

38. On or about January 10, 2018 Wakefield was hired / retained by Med-Trans to collect on the alleged debt.

39. On or about January 10, 2018, Med-Trans and Wakefield (as an agent for Med-Trans) reported to TransUnion and Experian that Edwards had an open account in the amount of $46,188.00 that was in collections.

40. Edwards was not notified of such reporting.

41. On January 22, 2018 Edwards received correspondence from Wakefield , who had been retained as an agent for Med-Trans, to collect on the alleged outstanding balance. In addition to the alleged outstanding balance, the notice also claimed an amount of $2,209.46 as interest accruing at 6% per year.

42. On January 23, 2018 Edwards contacted an agent for Wakefield and offered to pay $11,000.00 in addition to the amount paid by Blue Cross and Blue Shield of Alabama ($11,437.30).

40. The Wakefield agent rejected this offer and demanded an additional $18,000.00, which Edwards rejected.

41. On or about January 30, 2018 Edwards corresponded with Wakefield, again disputing the amount of the alleged debt.

42. As it appeared that Wakefield had refused all reasonable offers by Edwards to resolve the matter, He demanded that Wakefield and its agents stop pursuing him.

43. Edwards also stated that "Wakefield and its agents should do nothing to mar or impact my credit.

44. On or April 30, 2019 Edwards applied for an indirect boat loan with US Bank.

45. On or about May 8, 2019 Edwards was denied the loan due to the reporting by Med-Trans and Wakefield that Edwards had an open account in the amount of $52,073.00 that was in collections.

46. This being the first notification to Edwards that the alleged debt had been reported on his credit report—even after demanding on January 30, 2018 that he be notified of any filing--, he obtained a copy of his credit report.

47. Upon receiving a copy of his credit report, Edwards noted that in addition to Trans Union reporting the alleged debt to Med-Trans, Experian also was reporting the alleged debt.

48. Edwards immediately disputed the alleged debt with both Trans Union and Experian and asked for verification of the same.

49. Edwards also checked with Equifax, who did not identify the alleged debt in its credit reporting on Edwards.

50. In making the disputes, and denying the existence of any such "debt" Edwards, among other things, noted that

      A. There was no written contract or agreement.

      B. There was no agreed upon amount of the initial alleged debt;

C. There was no agreed upon terms of repayment of the alleged debt, i.e. no deadline when the debt was to be paid, no date each month for a monthly payment, nor amount; no interest rate and no penalties for a "late" payment

51. On or about June 15, 2019 both Trans Union and Experian rejected Edwards dispute claiming the alleged debt was verified as accurate.

52. Thereafter, Edwards has been denied other loans and charged interest rates that were higher than what he would have been charged but for the above described conduct of the Defendants.

## COUNT I

## Defendant Wakefield violated 15 U.S.C. 1692(e)

53. Paragraphs One (1) through Fifty-two (52) are realleged and incorporated herein by reference and made paragraph Fifty-three (53).

54. Defendant Wakefield reported to Defendants Experian and Trans Union credit information that Edwards owes a 'debt: to Med-Trans, to-wit Edwards had an open account in the amount of $46,188.00 that was in collections with interest accruing at 6% per year.

55. Defendant Wakefield knew that such information was false. The alleged "debt" owed by Edwards to Med-Trans did not and does not satisfy the definition of "debt" as defined by the Fair Collections Practices Act.

56. There was no "debt". There was no written contract or agreement between Edwards and Med-Trans. There was no agreed upon amount of the initial alleged debt;  there was no agreed upon terms of repayment of the alleged debt, i.e. no deadline when the debt was to be paid, no date each month for a monthly payment, nor amount; no interest rate and no penalties for a "late" payment.

57. Defendant Wakefield was aware of these facts and despite this knowledge, falsely reported that Edwards owed such debt, while intentionally omitting the facts set forth above.

58. That as a result of the above described conduct, Edwards has been denied loans and charged higher rates of interest on other loans that would not have been charged but for the conduct of the Defendants as described above. Edwards has also suffered mental and emotional anguish.

WHEREFORE, Edwards demands judgment against Defendant Wakefield for an appropriate amount of actual damages, compensatory damages and punitive damages, attorneys' fees, and costs.

## COUNT II

### Defendants Trans Union and Experian negligent violation of 15 U.S.C. 1681e,

59. Paragraphs One (1) through Fifty-eight (58) are realleged and incorporated herein by reference and made paragraph Fifty-nine (59).

60. Pursuant to 15 U.S.C. 1681e(b), Defendants Trans Union and Experian had a duty to follow reasonable procedures to assure maximum possible accuracy of the information concerning Edwards.

61. Pursuant to U.S.C 15 §§ 1681(e) and 1681(o), the Defendants Trans Union and Experian negligently breached this duty as the reports they generated and issued had inaccurate information and they did not follow reasonable procedures to assure maximum possible accuracy.

62. If Defendants Trans Union and Experian had not breached this duty, it would have discovered the following information:

   A. There was no "debt"

   B. There was no written contract or agreement.

   C. There was no agreed upon amount of the initial alleged debt;

   D. There was no agreed upon terms of repayment of the alleged debt, i.e. no deadline when the debt was to be paid, no date each month for a monthly payment, nor amount; no interest rate and no penalties for a "late" payment

13

63.  If the Defendants had not negligently violated such duties, they would have determined the that the alleged "debt" was inaccurate and not verifiable because it did not exist and would have deleted that item information and blocked it from reporting.

64.  That as a result of the above described conduct, Edwards has been denied loans and charged higher rates of interest on other loans that would not have been charged but for the conduct of the Defendants as described above. Edwards has also suffered mental and emotional anguish.

WHEREFORE, Edwards demands judgment against Defendants TransUnion and Experian for an appropriate amount of actual damages, compensatory damages and punitive damages, attorneys' fees, and costs.

## COUNT III

## Defendants Trans Union and Experian willfully violated 15 U.S.C. 1681e

65.  Paragraphs One (1) through Sixty-Five (65) are realleged and incorporated herein by reference and made paragraph Sixty-Six (66).

66.  On or about May 8, 2019 Edwards first learned that Defendants Med-Trans and Wakefield had reported the alleged "debt" to Defendants Trans Union and Experian. Specifically, that Edwards had an open account in the amount of $52,073.00 that was in collections.

14

67.  Edwards immediately disputed the alleged debt with both Trans Union and Experian and asked for verification of the same.

68. In making the disputes, and denying the existence of any such "debt":, Edwards, among other things, noted that

      A. There was no written contract or agreement.

      B. There was no agreed upon amount of the initial alleged debt;

      C. There was no agreed upon terms of repayment of the alleged debt, i.e. no deadline when the debt was to be paid, no date each month for a monthly payment, nor amount; no interest rate and no penalties for a "late" payment

69. On or about June 15, 2019 both Defendants Trans Union and Experian rejected Edwards dispute claiming the alleged debt was verified by Defendants Med-Trans and Wakefield as accurate.

70. The Defendants negligently violated their duties of reasonable and accurate investigation as set forth in 15 U.S.C. 1681(e) and 1681(n).

71. If the Defendants had not wilfully violated such duties, they would have determined the that the alleged "debt" was inaccurate and not verifiable because it did not exist and would have deleted that item information and blocked it from reporting.

72. That as a result of the above described conduct, Edwards has been denied loans and charged higher rates of interest on other loans that would not

have been charged but for the conduct of the Defendants as described above. Edwards has also suffered mental and emotional anguish.

WHEREFORE, Edwards demands judgment against Defendants TransUnion and Experian for an appropriate amount of actual damages, compensatory damages, attorneys' fees, and costs .

## COUNT IV

## Defendants Med-Trans and Wakefield negligent violation of 15 U.S.C. 1681s-2(b)

73. Paragraphs One (1) through Seventy-Two (72) are realleged and incorporated herein by reference and made paragraph Seventy-Three (73).

74. On or about May 8, 2019 Edwards first learned that Defendants Med-Trans and Wakefield had reported the alleged "debt" to Defendants Trans Union and Experian. Specifically, that Edwards had an open account in the amount of $52,073.00 that was in collections.

75. Edwards immediately disputed the alleged debt with both Trans Union and Experian and asked for verification of the same.

76. In making the disputes, and denying the existence of the alleged "debt" Edwards, among other things, noted that

A. There was no written contract or agreement.

B. There was no agreed upon amount of the initial alleged debt;

C. There was no agreed upon terms of repayment of the alleged debt, i.e. no deadline when the debt was to be paid, no date each month for a monthly payment, nor amount; no interest rate and no penalties for a "late" payment

77. On or about June 15, 2019 both Defendants Trans Union and Experian rejected Edwards dispute claiming the alleged debt was verified by Defendants Med-Trans and Wakefield as accurate.

78. The Defendants Med-Trans and Wakefield negligently violated their duties as set forth in 15 U.S.C. 1681s-2(b), and 1681o; including, but not limited to:

A. Not conducting a good-faith investigation with respect to the allegeded debt;

B. Not reviewing all relevant information provided by Edwards to Defendants Transunion and Experian;

C. Failing to report to Defendants Transunion and Experian the information regarding the alleged debt was inaccurate and that the alleged debt should be deleted from Edwards credit report and permanently blocked.

79. If the Defendants had not negligently violated such duties, they would have determined the that the alleged "debt" was inaccurate and not verifiable

because it did not exist and would have deleted that item information and blocked it from reporting.

80. That as a result of the above described conduct, Edwards has been denied loans and charged higher rates of interest on other loans that would not have been charged but for the conduct of the Defendants as described above. Edwards has also suffered mental and emotional anguish.

WHEREFORE, Edwards demands judgment against Defendants TransUnion and Experian for an appropriate amount of actual damages, compensatory damages and punitive damages, attorneys' fees, and costs

## COUNT V

## Defendants Med-Trans and Wakefield willful violation of 15 U.S.C. 1681s-2(b)

81. Paragraphs One (1) through Eighty (80) are realleged and incorporated herein by reference and made paragraph Eighty-One (81).

82. On or about May 8, 2019 Edwards first learned that Defendants Med-Trans and Wakefield had reported the alleged "debt" to Defendants Trans Union and Experian. Specifically, that Edwards had an open account in the amount of $52,073.00 that was in collections.

83. Edwards immediately disputed the alleged debt with both Trans Union and Experian and asked for verification of the same.

84. In making the disputes, and denying the existence of the alleged "debt" Edwards, among other things, noted that

A. There was no written contract or agreement.

B. There was no agreed upon amount of the initial alleged debt;

C. There was no agreed upon terms of repayment of the alleged debt, i.e. no deadline when the debt was to be paid, no date each month for a monthly payment, nor amount; no interest rate and no penalties for a "late" payment

85. On or about June 15, 2019 both Defendants Trans Union and Experian rejected Edwards dispute claiming the alleged debt was verified by Defendants Med-Trans and Wakefield as accurate.

86. The Defendants Med-Trans and Wakefield willfully violated their duties as set forth in 15 U.S.C. 1681s-2(b), and 1681(n); including, but not limited to:

A. Not conducting a good-faith investigation with respect to the alleged debt;

B. Not reviewing all relevant information provided by Edwards to Defendants Transunion and Experian;

C. Failing to report to Defendants Transunion and Experian the information regarding the alleged debt was inaccurate and that the alleged debt should be deleted from Edwards credit report and permanently blocked.

87. If the Defendants had not willfully violated such duties, they would have determined the that the alleged "debt" was inaccurate and not verifiable because it did not exist and would have deleted that item information and blocked it from reporting.

88. That as a result of the above described conduct, Edwards has been denied loans and charged higher rates of interest on other loans that would not have been charged but for the conduct of the Defendants as described above. Edwards has also suffered mental and emotional anguish.

WHEREFORE, Edwards demands judgment against Defendants TransUnion and Experian for an appropriate amount of actual damages, compensatory damages and punitive damages, attorneys' fees, and costs

**PLAINTIFF DEMANDS TRIAL**

**BY STRUCK JURY.**

Respectfully Submitted,

*/s/ James M. Wooten*
JAMES M. WOOTEN  (OO049)
Attorney for the Plaintiff
2001 Park Place N., Suite 875
Birmingham, Alabama  35203
Phone (205) 322-7707
Fax     (205) 322-7779
jmwooten3162@gmail.com
ASB-1630-04oj

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have served a copy of the foregoing Amended

Complaint via the Court's CM/ECF system to counsel for the following respective

Defendants, set forth below, on this the 18th of March 2020 as follows:

**Counsel for Transunion LLC**
Matthew Robinett
NORMAN, WOOD, KENDRICK & TURNER
Ridge Park Place, Suite 3000
1130 22nd Street South
Birmingham, AL 35205

**Counsel for Experian Information Solutions Inc**
L Jackson Young, Jr.
FERGUSON FROST & DODSON LLP
1400 Urban Center Drive, Suite 200
Birmingham, AL 35243-0189

**Counsel for Wakefield & Associates, Inc.**
Neal D. Moore, III
FERGUSON, FROST, MOORE & YOUNG, LLP
1400 Urban Center Drive, Suite 200
Birmingham, AL. 35242

I hereby certify that I have served a copy of the foregoing Amended

Complaint to Magistrate Judge Jurisdiction via the U.S. Mail, First class, postage

prepaid, to the following Defendant, set forth below, on this the 18th of March

2020 as follows:

Med Trans Corporation
c/o Corporation Service Company
1709 North 19th Street, Suite 3
Bismarck, North Dakota 58501-2121

*/s/ James M. Wooten*