FILED
2021 Mar-22  PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANDREW EDWARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-CV-00114-CLM** |
| | ) | |
| **MED-TRANS CORPORATION,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Air-ambulance service Med-Trans Corporation charged Andrew Edwards about $50,000 for flying him from Chattanooga to Birmingham. Edwards—who was in a medically induced coma—argues that he did not agree to pay for the flight, so he owes Med-Trans nothing.

But Edwards hasn't sued Med-Trans to determine whether he owes the money. At least not here. Edwards instead sues Med-Trans's third-party debt collector under the Fair Debt Collections Practice Act ("FDCPA") for telling credit reporting agencies that Edwards owed Med-Trans about $50,000. Edwards also sues four Defendants—Med-Trans, the debt collector, and two credit reporting agencies—under the Fair Credit Reporting Act ("FCRA") for reporting that Edwards owed Med-Trans about $50,000, then failing to conduct an investigation that would have proved Edwards had not contracted with Med-Trans. In other words, all of

Edwards' claims depend on the legal conclusion that there is no contract between Edwards and Med-Trans—a conclusion that Edwards does not ask the court to make.

Edwards has amended his complaint four times. For the reasons stated within, the court **DISMISSES** Edwards's fourth amended complaint **with prejudice**.

## STATEMENT OF THE FACTS

### A. The Transport

Edwards suffered a heart attack while in Chattanooga, and he was promptly taken to Erlanger Hospital in Chattanooga. Doctors there stabilized Edwards and put him into a medically induced coma. With Edwards stable, the doctors decided to fly Edwards to Birmingham so that he could be treated by his regular physician.

Edwards was either unconscious or semi-conscious when the decision to transport was made. Either way, the parties agree that Edwards could not make the decision. So Edwards's mother signed the authorization to have Med-Trans fly her son to Birmingham. Edwards alleges that Med-Trans did not disclose the cost of the flight at the time, and no one agreed at the time that Edwards would have to pay for the flight.

### B. The Bill

Once Edwards started to recover, Med-Trans sent him an authorization form that would allow Med-Trans to bill Edwards's insurance company, Blue Cross Blue Shield ("Blue Cross"), for the flight. The form contained the following language:

> I understand that I am financially responsible for the billed charges for the services provided to patient by Med-Trans Corporation, regardless of my insurance coverage and in some cases may be responsible for an amount in addition to that which is paid by my insurance, such as co-pay, co-insurance, deductible and any remaining balance.

As he filled out the form, Edwards underlined this section and added "…subject to fair and reasonable charges." Edwards then signed the form.

Sometime later, Med-Trans told Edwards that it was claiming $57,616.07 from Blue Cross. Blue Cross told Edwards that Blue Cross owed Med-Trans $14,009.30 and Edwards owed $2,582.00 as co-pay plus deductible. Med-Trans then told Edwards that he owed Med-Trans the remaining $46,188.77.

### C. The Dispute

Both Edwards and Med-Trans unsuccessfully appealed Blue Cross's decision. Blue Cross told Edwards that its determination aligned with national averages for such services ($14,009.03) to cover costs and profit for medical transport.

Edwards and Med-Trans then tried to resolve the issue between themselves. Those talks failed.

Edwards then disputed the charged amount and asked Med-Trans to justify it. (Edwards alleges that Med-Trans previously told him that it would have accepted Blue Cross's $14,009.30 as full payment if Edwards had not crossed state lines.) Med-Trans ultimately denied Edwards's appeal.

### D. Debt Collection

About two months later, Med-Trans hired Wakefield & Associates, Inc. to collect from Edwards. Wakefield sent Edwards a notice that he owed the outstanding balance plus interest, roughly $50,000. Edwards offered to pay $11,000.00 to resolve the dispute. Wakefield rejected Edwards's offer and gave a counteroffer, which Edwards rejected. Further talks proved futile.

Finally, Edwards told Wakefield that he was still working with Med-Trans to resolve the dispute, so Wakefield should not report any alleged debt to credit reporting agencies ("CRAs"). Edwards said that if Wakefield had notified the CRAs, Wakefield should revoke the notice and notify Edwards of the revocation.

Edwards never communicated with Med-Trans or Wakefield again.

### E. Credit Reports

More than a year later, Edwards was denied a loan because of reporting that he had an open account in collections for $52,073.00. Edwards alleges that this was the first he learned of the credit reporting.

So Edwards obtained a copy of his credit report. On it, TransUnion and Experian were reporting the alleged debt. Equifax was not. Edwards promptly disputed the alleged debt with TransUnion and Experian. He argued that there was no debt for three reasons: (1) there was no written contract or agreement; (2) there

was no agreed upon amount of the initial alleged debt; and (3) there were no agreed upon terms. Both CRAs rejected Edwards's dispute. TransUnion sent Edwards a letter that verified the debt as accurate and said that Wakefield had put the account into collection, with a balance of $53,072.00.

Edwards has since been denied loans and charged higher interest rates, which Edwards attributes to the CRAs reporting the amount claimed by Wakefield.

## STANDARD OF REVIEW

Because this is a Rule 12 motion, the court accepts the allegations in Edwards' complaint as true and construes them in the light most favorable to Edwards. *Lanfear v. Home Depot, Inc.*, 697 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether all of Edwards' allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). If the facts as pleaded could entitle Edwards to relief, then the court must deny Defendants' motion to dismiss. If, however, the court accepts all of Edwards' pleaded facts as true, and Edwards still would not be entitled to relief, then the court must grant the motion. Only the complaint, attachments to the complaint, and briefs are to be considered.[1]

---

[1] Edwards's motion to partially strike (doc. 66) is moot because the court did not consider the attachments to Defendant Med-Trans motion in this decision.

## ANALYSIS

Edwards puts the cart before the horse—*i.e.*, Edwards wants to prove that Defendants illegally reported and attempted to collect a non-existent debt before Edwards legally establishes that the debt does not exist. That flaw alone requires the court to dismiss six of Edwards's seven counts.

## I. Fair Credit Reporting Act Claims (Counts 2-7)

Edwards pleads six counts under the FCRA:

- <u>Counts 2-3</u>: Trans Union and Experian negligently and willfully included inaccurate information in Edwards's credit report, in violation of 15 U.S.C. § 1681e;

- <u>Counts 4-5</u>: Trans Union and Experian negligently and willfully failed to conduct a reasonable investigation after Edwards filed a dispute, in violation of 15 U.S.C. § 1681i; and,

- <u>Counts 6-7</u>: Med-Trans and Wakefield negligently and willfully failed to conduct a reasonable investigation after Edwards filed a dispute with Trans Union and Experian, in violation of 15 U.S.C. § 1681s-2(b).

Doc. 53, ¶¶ 59-102. While Edwards's counts fall under three distinct provisions of § 1681, each count requires Edwards to present "evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." *Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020) (quoting *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th

Cir. 1991)). If Edwards fails to plead facts that would prove the information in his report was "inaccurate," then "he, as a matter of law, has not established a violation of the FCRA." *Id.*

Edwards doesn't allege that Defendants reported or tried to collect an "inaccurate" amount of debt. He alleges that "[t]here was no 'debt'; [t]here was no written contract or agreement." Doc. 53, ¶62. The Eleventh Circuit's recent decision in *Batterman* shows why the difference between pleading 'inaccurate amount' and 'no contract' is fatal to Edwards's FCRA claims.

## A. The *Batterman* decision

Jared Batterman rented an apartment from BR Carroll. Batterman's lease said that Batterman was not responsible for any Act of God or catastrophic event that made the apartment uninhabitable. Batterman told BR Carroll that he was leaving the apartment early because the apartment had flooded and BR Carroll failed to remediate the resulting problems (*e.g.*, mold).

BR Carroll acknowledged Batterman's notice but claimed that Batterman owed $2,816 for early termination damages. Batterman didn't pay, so BR Carroll hired IQ Data to collect the money. Both BR Carroll and IQ Data reported the unpaid money to CRAs, and Equifax and TransUnion included the delinquency on Batterman's credit report.

When Batterman found out, he told Equifax and TransUnion that the reporting

was false and asked the CRAs to investigate. When Batterman started having credit-related issues, he sued BR Carroll, IQ Data, and both CRAs. Like Edwards here, Batterman claimed that (a) the CRA Defendants negligently and willfully violated the FCRA by allowing inaccurate information to be included in his credit report and (b) all Defendants negligently and willfully violated the CRA by failing to conduct an investigation that would have led to the removal of inaccurate information. *See Batterman*, 829 Fed. App'x at 479-80.

The district court granted the Defendants' Rule 12(c) motion for a judgment on the pleadings. The Eleventh Circuit affirmed. Because every word of the Circuit's reasoning is on-point here, the court quotes it entirely:

> We conclude from the record that the district court properly granted Appellees' motion for judgment on the pleadings because Batterman's complaint does not allege that the reported debt is inaccurate as to the amount. His complaint focuses on the inclusion of the liquidated damages on his credit reports and his allegation that he does not owe liquidated damages to BR Carroll. The report of the liquidated damages is not a factual inaccuracy; rather, it is a contractual dispute. Such contractual disputes require resolution by a court of law, not a credit reporting agency. Batterman's claims are not that the Appellees reported any factually incorrect information in his credit report, but rather, that they failed to accept his interpretation that he lawfully terminated the lease due to its uninhabitability. Unfortunately, the lease is silent regarding who determines whether an apartment is uninhabitable and any consequences on the tenant's responsibility for liquidated damages. The Appellees could not have addressed issues related to the amount of the debt until the legal issues surrounding the lease were resolved first.
>
> We conclude that Batterman's complaint concerns a contractual dispute

> that requires resolution by a court of law, not a credit reporting agency.
> As such, the complaint does not allege a factual inaccuracy in the credit
> reports and does not contain allegations sufficient to raise a right to
> relief on Batterman's FCRA claims. Accordingly, for the
> aforementioned reasons, we affirm the district court's order granting
> the Appellees' motion for judgment on the pleadings.

*Id.* at 481-482. For those who gloss over block quotes, the Court held that because

Batterman challenged BR Carroll's reading of the contract, rather than the amount

he reportedly owed under the contract, he had not pleaded a viable FCRA claim.

## 2. Application to this Case

This case is just like *Batterman*. Like Batterman, Edwards does not allege that

the reported amount is inaccurate; he alleges that he is not contractually obligated to

pay it. Like Batterman, Edwards sued the party claiming the debt, the debt collector,

and two CRAs. And Edwards pleads the same FCRA claims as Batterman. So the

court must reach the same result that the Circuit Court did in *Batterman*: Edwards's

"complaint concerns a contractual dispute that requires resolution by a court of law,

not a credit reporting agency. As such, the complaint does not allege a factual

inaccuracy in the credit reports and does not contain allegations sufficient to raise a

right to relief on [Edwards's] FCRA claims." *Id.*

So the court will dismiss Counts 2-7 of Edwards's fourth amended complaint.

Because Edwards has had five chances to plead these claims, the dismissal will be

with prejudice.

## II.    Fair Debt Collection Practice Act (Count 1)

That leaves only Count I, in which Edwards alleges that Wakefield falsely reported to the CRAs that Edwards owed Med-Trans $46,188 plus interest. *See* Doc. 53, ¶¶ 53-58. As he did in Counts 2-7, Edwards alleges that "[t]here was no 'debt'; [t]here was no contract or agreement between Edwards and Med-Trans." Doc. 53, ¶56. But the court needn't decide whether Edwards's pleading of "no debt" is fatal to his claim of an unfair debt collection because the claim is time barred.[2]

### A. The Pleaded Claim

Plaintiffs must file FDCPA claims "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Supreme Court recently affirmed that the statute means what it says: the Plaintiff must file his complaint "within one year of the alleged FDCPA violation," not within one year of discovering the violation. *Rotiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019). So the court must determine two things: (1) what event constitutes the alleged violation, and (2) did Edwards file his complaint within one year of that event.

Edwards alleges the following in Count 1:

54.    Defendant Wakefield reported to Defendants Experian and TransUnion

---

[2] Edwards pleaded in Count 1 that "the alleged 'debt' owed by Edwards to Med-Trans did not and does not satisfy the definition of 'debt' as defined by the Fair Collections Practices Act (doc. 53, ¶ 55), even though "section 1692e makes the existence of a 'debt' a threshold requirement for this section's applicability." *Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1371 (11th Cir. 1998)). Wakefield has preserved the argument that Edward's disavowal of a statutory 'debt' is another ground for dismissal. Doc. 55 at 5-7.

credit information that Edwards owes a 'debt' to Med-Trans, to-wit

Edwards had an open account in the amount of $46,188.00 that was in collections with interest accruing at 6% per year.

55.     Defendant Wakefield knew that such information was false. The alleged 'debt' owed by Edwards to Med-Trans did not and does not satisfy the definition of 'debt' as defined by the Fair Collections Practices Act.

56.     There was no 'debt.' There was no written contract or agreement between Edwards and Med-Trans. There was no agreed upon amount of the initial alleged debt; there was no agreed upon terms of repayment of the alleged debt, *i.e.* no deadline when the debt was to be paid, no date each month for a monthly payment, nor amount; no interest rate and no penalties for a 'late' payment.

57.     Defendant Wakefield was aware of these facts and despite this knowledge, falsely reported that Edwards owed such debt, while intentionally omitting the facts set forth above.

Doc. 53, ¶¶ 54-57. Based on this pleading, the alleged FDCPA violation occurred when Wakefield reported to Experian and TransUnion that Edwards owed Med-Trans $46,188, with interest accruing at 6%. *Id.* ¶ 54.

While Edwards does not plead the date, it is apparent from the face of the complaint that Wakefield reported the $46,188 debt amount before January 23, 2018—*i.e.*, two-plus years before Edwards filed his original complaint on January 23, 2020. *See* Doc. 1. Edwards alleges that Med-Trans hired Wakefield to collect the $46,188 debt on January 10, 2018 (doc. 53, ¶ 35) and that Wakefield told Edwards on January 22, 2018 that interest had caused his balance to increase to $48,398.23

(doc. 35, ¶ 36). That means that Wakefield must have informed the CRAs that "Edwards had an open account in the amount of $46,188.00" (doc. 53, ¶ 54) sometime between January 10 and January 22, 2018.

Rather than dispute this timeframe in his opposition brief, Edwards claims that he "isn't in a position to know when Wakefield first reported the alleged debt to any credit reporting agency." Doc. 62 at 10. Edwards's statement is odd, as Edwards pleaded that he could prove that the reporting happened around January 10, 2018, in *all four* of his previous complaints. *See* Docs. 1, ¶39; 23, ¶39; 24, ¶39; 30, ¶39. Here's how Edwards pleaded the timing in his third amended complaint:

> 38.   On or about January 10, 2018, Wakefield was hired / retained by Med-Trans to collect on the alleged debt.
>
> **39.   On or about January 10, 2018, Med-Trans and Wakefield (as an agent for Med-Trans) reported to Trans Union [*sic*] and Experian that Edwards had an open account in the amount of $46,188.00 that was in collections.**
>
> **40.   Edwards was not notified of such reporting.**
>
> 41.   On January 22, 2018, Edwards received correspondence from Wakefield, who had been retained as an agent for Med-Trans, to collect on the alleged outstanding balance. In addition to the alleged outstanding balance, the notice also claimed an amount of $2,209.46 as interest accruing at 6% per year.

Doc. 30, ¶¶ 38-41 (emphasis added). Edwards omitted the January 10, 2018 date in his fourth amended complaint after Wakefield moved to dismiss Edwards's third amended complaint because January 10, 2018 was more than two years before

Edwards filed his original complaint—meaning that the one-year statute of limitation barred his claim. Doc. 47 at 7-8.

Because Edwards did not re-plead the January 10th date in the operative (fourth amended) complaint, the court cannot consider it. But for the reasons already stated, it is still apparent from the face of the fourth amended complaint that Wakefield reported the debt to the CRAs sometime between January 10 and January 22, 2018. Because that timeframe ends more than two years before Edwards filed his original complaint, Count 1 is due to be dismissed as time barred.

### B. The May 2019 Update

Edwards says in his opposition brief that "Wakefield's reporting of the alleged debt and its non-existent terms occurred on at least two occasions." Doc. 62 at 9. The first occasion is the January 2018 report discussed above. *Id.* Edwards says that a second report must have occurred because "it was noted on the June 15, 2019 correspondence the Plaintiff received from TransUnion that the credit report had been 'updated' on May 13, 2019, indicating that Wakefield had updated its reporting to show the current balance of the alleged debt." *Id.*

Edwards argues that the court can split these two occurrences into two distinct FDCPA claims; dismiss as time barred the claim that arises from Wakefield's January 2018 reporting; and allow discovery on the claim based on the May 2019 update to the TransUnion report. Doc. 62 at 10 (citing *Kaplan v. Assetcare, Inc.*, 88

F. Supp. 2d 1355, 1360 (S.D. Fla. 2000)).

Even if the court could split claims, it wouldn't help Edwards for two reasons. First, Edwards does not allege in Count 1 that Wakefield violated the FDCPA by updating the debt amount in May 2019. The only violation that Edwards alleges is the reporting of the $46,188 debt in January 2018:

> 54.  Defendant Wakefield reported to Defendants Experian and TransUnion credit information that Edwards owes a 'debt' to Med-Trans, to-wit Edwards had an open account in the amount of $46,188.00 that was in collections with interest accruing at 6% per year.

> 55.  Defendant Wakefield knew that such information was false. The alleged 'debt' owed by Edwards to Med-Trans did not and does not satisfy the definition of 'debt' as defined by the Fair Collections Practices Act.

Doc. 53, ¶¶ 54-55. Second, Edwards does not plead facts that would show that *Wakefield* updated TransUnion's report in May 2019. Edwards's complaint alleges that a letter written by TransUnion to Edwards in June 2019 showed "that there was a claimed balance of $53,073.00 and that entry on his credit report had been updated on May 13, 2019." Doc. 53, ¶ 50. These pleaded facts do not attribute the May 2019 update to Wakefield.

The court must judge the complaint as pleaded; Edwards cannot use his brief in opposition to amend it. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009). Nor will the court allow Edwards to amend his complaint for a fifth time to include this new theory—especially when Edwards knew that Wakefield would raise

the statute of limitation defense because it had done so before. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Repeated failure to cure deficiencies by amendments previously allowed" is sufficient reason to dismiss a complaint); *Crooked Creek Props. v. Ensley*, 660 F. App'x 719, 722 (11th Cir. 2016) (affirming the district court's decision not to allow Plaintiff a sixth opportunity to amend).

* * *

The court will dismiss Count 1 because it is time barred. Because Edwards has pleaded his FDCPA claim five times, the dismissal will be with prejudice.

## CONCLUSION

For these reasons, the court will **DISMISS** Edwards's fourth amended complaint **with prejudice**. The court will enter a separate order to this effect.

**DONE** this 22nd day of March 2021.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE